# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| GD Energy Products, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 6:25-cv-00499 |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| Premium Oilfield Technologies, LLC | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, GD Energy Products, LLC ("Plaintiff" or "GDEP"), by its attorneys, brings this action for damages and injunctive relief against Premium Oilfield Technologies, LLC ("Defendant" or "Premium") for willful patent infringement, and alleges as follows:

## I.
## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

2. Premium has infringed and continues to infringe at least one claim of each of U.S. Patent Nos. 11,208,997 (the "'997 Patent") and 11,732,709 (the "'709 Patent") (collectively, the '997 Patent, and '709 Patent being the "Asserted Patents").

3. With knowledge of the Asserted Patents, Premium infringes the Asserted Patents by developing, making, using, selling, offering for sale, and/or importing into the United States products that incorporate the technology patented in the Asserted Patents.

-1-

4. Premium's infringement of the Asserted Patents, based on its knowledge of the Asserted Patents and copying of GDEP's products covered by the Asserted Patents, is intentional, deliberate and willful in total disregard of GDEP's patent rights.

5. GDEP seeks damages and other relief including a permanent injunction for Premium's willful infringement.

## II.
## PARTIES

6. Plaintiff GDEP is an Oklahoma corporation with its principal place of business located at 4747 South 83rd East Ave, Tulsa, Oklahoma, 74145.

7. Defendant Premium is a Delaware corporation with a principal place of business located at 10600 W Sam Houston Pkwy N, Houston, Texas, 77064.

8. In addition to having its principal place of business in Houston, Premium maintains facilities in this judicial district, in Midland, with an address of 10207 W Industrial Ave, Midland, TX 79706, and in Bryan, with an address of 1519 C Crosswinds, Bryan, TX 77808 *See* https://www.premiumoilfield.com/contact-us.

## III.
## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over GDEP's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), because they arise under the laws of the United States, specifically those related to the infringement of U.S. Patents, 35 U.S.C. § 1, *et seq*.

10. Premium is subject to this Court's specific personal jurisdiction, at least because it markets, distributes, offers for sale, and/or sells infringing products throughout the United States from, and including in, this judicial District. This Court further has specific personal jurisdiction over Defendant because, as described below, it purposefully avails itself, and enjoys the benefits, of the laws of Texas, it has sufficient minimum contacts with the State of Texas and this District,

this action arises out of these contacts, and exercising jurisdiction over Defendant would be reasonable and comport with the requirements of due process.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) at least because Premium has committed acts of infringement and has regular and established places of business in this District.

## IV. FACTUAL BACKGROUND

### A. GDEP

12. GDEP's history spans over 150 years, from when Robert Gardner developed a revolutionary compressor and founded Gardner Denver. Over the years, GDEP has developed into a world leader in pumping technology and services. GDEP designs, makes, and sells a variety of pump systems and parts (*see*, *e.g.*, https://gdenergyproducts.com/products) and provides related services (*see*, *e.g.*, https://gdenergyproducts.com/services).

13. GDEP's competitiveness depends in large part on its research and development activities, which allows it to successfully develop and launch new products while reducing its costs. GDEP protects its research and development investments by, among other things, filing patent applications from which GDEP has been rewarded with patents held around the world including the Asserted Patents.

### B. The '997 Patent

14. The '997 Patent is directed to features of a wear plate for a drill pump. A true and correct copy of the '997 Patent is attached hereto as **Exhibit A**.

15. The '997 Patent, entitled "Wear Plate for a Drill Pump," was duly and legally issued by the United States Patent Office on December 28, 2021 from an application filed on March 13, 2018, naming Kyle Christopher Chady and Jordan Anthony Genenbacher as inventors.

16. The '997 Patent claims priority to U.S. Provisional Application 62/471,153, filed March 14, 2017.

17. GDEP holds, by assignment, all right, title, and interest in and to the '997 Patent.

18. Pursuant to 35 U.S.C. § 282, the '997 Patent is presumed valid.

19. The '997 Patent generally relates to a wear plate assembly design for a drilling module of a drill pump. An exemplary embodiment of the inventive wear plate assembly is shown in Figure 5 of the '997 Patent, reproduced below with annotated features. As shown below, the exemplary wear plate assembly embodiment includes an annular wear plate, a radial seal on the radially outer surface of the wear plate, and an axial seal positioned adjacent to a shoulder of the wear plate. As explained in the '997 patent, either seal or both seals may be used.



FIG. 5

20. An exemplary arrangement of the wear plate assembly within a fluid end bore of a housing of a drill pump is shown in Figure 7 of the '997 Patent, reproduced below with annotated

references identifying relevant features. When arranged in the fluid end, the radial seal (if present) engages the fluid end bore and the axial seal (if present) engages the housing.



FIG. 7

21.     Claim 1 of the '997 Patent reads as follows:

1. A drilling module of a drill pump, the drilling module comprising:

    a housing defining a fluid path having a fluid inlet, a fluid outlet, and a fluid end bore branched off therebetween;

    a piston retainer mounted to the housing such that the piston retainer is external to the fluid end bore; and

    a wear plate assembly positioned within the fluid end bore and abutting against the fluid end bore and the piston retainer, the wear plate assembly comprising:

-6-

an annular wear plate having a radial outer surface; and

a radial seal compressed between the fluid end bore and the radial outer surface of the annular wear plate.

22. The drilling module including the wear plate assembly of the '997 Patent represents a significant improvement over the prior art.

23. The drilling module as claimed in the '997 Patent provided a novel and nonobvious solution at the time of the invention.

24. The '997 Patent is practiced by GDEP including by, for example, GDEP's 7500 HD Fluid End, pictured below.



*See* https://fs.hubspotusercontent00.net/hubfs/19543953/Spec%20Sheets/GDEP_GD%207500%20HD%20Module_Spec%20Sheet_2022.pdf.

25. Pursuant to 35 U.S.C. § 287, GDEP marks its 7500 HD Fluid End products with the '997 Patent.

    **C.**    **The '709 Patent**

26. The '709 Patent is directed to a wear plate for a drill pump. A true and correct copy of the '709 Patent is attached hereto as **Exhibit B**.

27. The '709 Patent, entitled "Wear Plate for a Drill Pump," was duly and legally issued by the United States Patent Office on August 22, 2023 from an application filed on November 22, 2021, naming Kyle Christopher Chady and Jordan Anthony Genenbacher as inventors.

28. The '709 Patent is a divisional of the '997 Patent and claims priority to U.S. Provisional Application 62/471,153, filed March 14, 2017.

29. GDEP holds, by assignment, all right, title, and interest in and to the '709 Patent.

30. Pursuant to 35 U.S.C. § 282, the '709 Patent is presumed valid.

31. The '709 Patent generally relates to a wear plate assembly design and includes the same disclosure as the '997 Patent. The exemplary embodiments of Figures 5 and 6 are reproduced below with additional annotations identifying yet other features of the invention.



FIG. 5



FIG. 6

32. Claims 1 and 2 of the '709 Patent read as follows:

1. A wear plate assembly of a drill pump, the wear plate assembly comprising:

a wear plate extending between a first axial end and a second axial end, the wear plate comprising:

an annular cross-section defined by a bore inner surface and a radial outer seal surface, the bore inner surface being configured to form at least a portion of a flow path between a housing and a piston when the piston is external to the housing,

an annular seal groove in the radial outer seal surface at a position between the first axial end and the second axial end, and

a shoulder extending radially outward from the radial outer seal surface at the second axial end.

2. The wear plate assembly of claim 1, further comprising a radial seal positioned within the annular seal groove, the radial seal being compressible in a radial direction.

33. The wear plate assembly of the '709 Patent represents a significant improvement over the prior art.

34. The wear plate assembly as claimed in the '709 Patent provided a novel and nonobvious solution at the time of the invention.

35. The '709 Patent is practiced by GDEP including by, for example, GDEP's 7500 HD Fluid End.

36. Pursuant to 35 U.S.C. § 287, GDEP marks its 7500 HD Fluid End products with the '709 Patent.

**D.     Defendant Premium**

37. On information and belief, Premium has been in business since 2013.

38. On information and belief, Premium's business model revolves around copying and selling replaceable components of various manufacturers' pump systems and parts. For example, Premium has copied and now offers for sale replacement versions of GDEP's high pressure fluid end modules. Premium states on its website, "Premium offers a complete line of fluid end modules and components that are manufactured to OEM specifications and interchangeability. We offer 7500 psi designs for all major pumps," which includes at least Gardner Denver's PZ11. *See* https://www.premiumoilfield.com/mud-pumps/7500-psi-modules.

39. Premium's fluid end modules manufactured to Gardner Denver specifications include at least its GX-7500 and DX-7500. See **Exhibit C**. On information and belief, these fluid end modules contain "Wear Ring, HD Black (OEM), PXL7500 Fluid End, For PZ-10/11 Pump" or similar products ("wear plates"). See **Exhibit D** and **Exhibit E** (shown below). Premium's

"wear plates" and any Premium fluid end modules containing these products and components are the "Accused Products."



Premium's Wear Plate

## V.
## COUNTS

**A.     Count I - Infringement of U.S. Patent No. 11,208,997 (the '997 Patent)**

40.     GDEP realleges and incorporates by reference the allegations of paragraphs 1 through 39 set forth above.

41.     Premium directly infringes, literally and/or under the doctrine of equivalents, the '997 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States or importing into the United States the Accused Products.

42.     As a non-limiting example, Premium directly infringes, literally or under the doctrine of equivalents, at least independent claim 1 of the '997 Patent in at least the following manner.

43.     The Accused Products include a "[a] drilling module of a drill pump, the drilling module comprising: a housing defining a fluid path having a fluid inlet, a fluid outlet, and a fluid

end bore branched off therebetween; a piston retainer mounted to the housing such that the piston retainer is external to the fluid end bore;" as shown in the model of the Accused Products reproduced below, taken from Premium's website (**Exhibit C**), with exemplary annotations added:



44. The Accused Products include "a wear plate assembly positioned within the fluid end bore and abutting against the fluid end bore and the piston retainer, the wear plate assembly comprising: an annular wear plate having a radial outer surface; and a radial seal compressed between the fluid end bore and the radial outer surface of the annular wear plate[]" as illustrated in the above drawing. The wear plate assembly of the Accused Products can be seen in more detail in the photograph below (**Exhibit E**), which shows the radial outer surface and the radial groove where the radial seal is installed in the assembled configuration shown in the drawing above:



45. Premium has infringed, and continues to infringe, literally or under the doctrine of equivalents, at least claim 1 of the '997 Patent in violation of 35 U.S.C. § 271(a), by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

46. On information and belief, Premium indirectly infringes the '997 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly inducing its customers to directly infringe one or more claims of the '997 Patent. Specifically, Premium induces, encourages, and intends that its customers directly infringe the '997 Patent through, for example, their advertisement, marketing, sales, instructions, product manuals, technical support, onsite testing, use, quality assurance, and maintenance of the Accused Products. Premium has known and knows that its customers' making and use of the Accused Products constitutes direct infringement of at least independent claim 1 of the '997 Patent.

47. On information and belief, Premium indirectly infringes the '997 Patent, in violation of 35 U.S.C. § 271(c), by actively and knowingly contributing to infringement of one or more claims of the '997 Patent, at least by selling and/or offering to sell wear plate assemblies and components (*see* **Exhibit D**) knowing that such wear plate assemblies and components are especially made or adapted for practicing one or more claims of the '997 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically, Premium has known and knows that its wear plate assembly is especially made or adapted for use with and in the Accused Products, and that after installation, use of the Accused Products by Premium's customers constitutes direct infringement of at least claim 1 of the '997 Patent. Moreover, Premium has known and knows that there is no substantial, non-infringing use for its wear plate because its only use is with the Accused Products.

48. Premium has actual and constructive notice of the '997 Patent based at least in part on GDEP's marking of its products with the '997 Patent and by the filing of this Complaint.

49. On information and belief, despite having knowledge of the '997 Patent and GDEP's products, Premium intentionally copied the wear plate assembly used in GDEP's 7500 HD Fluid End product and has continued its infringement with disregard of the '997 Patent.

50. Premium's infringement of the '997 patent is willful, deliberate, and intentional, and Premium is acting in reckless disregard of GDEP's patent rights.

51. Because of Premium's infringement of the '997 Patent, GDEP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

52. Unless enjoined, Premium, and/or others acting on behalf of Premium, will continue their infringing acts, thereby causing additional irreparable injury to GDEP for which there is no adequate remedy at law.

53. Premium's actions render this an exceptional case and entitles GDEP to attorneys' fees and costs under 35 U.S.C. § 285.

  **B.  Count II - Infringement of U.S. Patent No. 11,732,709 (the '709 Patent)**

54. GDEP realleges and incorporates by reference the allegations of paragraphs 1 through 53 set forth above.

55. Premium directly infringes, literally or by the doctrine of equivalents, the '709 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States or importing into the United States the Accused Products.

56. As a non-limiting example, Premium directly infringes, literally or under the doctrine of equivalents, at least claims 1 and 2 of the '709 Patent in at least the following manner.

57. The Accused Products include "[a] wear plate assembly of a drill pump, the wear plate assembly comprising: a wear plate extending between a first axial end and a second axial end, the wear plate comprising: an annular cross-section defined by a bore inner surface and a radial outer seal surface, the bore inner surface being configured to form at least a portion of a flow path between a housing and a piston when the piston is external to the housing," as shown in the model of the Accused Products reproduced below, taken from Premium's website (**Exhibit C**), with exemplary annotations added:



58.     The Accused Products include "an annular seal groove in the radial outer seal surface at a position between the first axial end and the second axial end, and a shoulder extending radially outward from the radial outer seal surface at the second axial end[]," and "a radial seal positioned within the annular seal groove, the radial seal being compressible in a radial direction" as illustrated in the above drawing. The wear plate assembly of the Accused Products can be seen in more detail in the photograph below, which shows the radial outer surface, the annular seal groove, and the shoulder in more detail (**Exhibit E**):



59. Premium has infringed, and continues to infringe, literally or by the doctrine of equivalents, at least claims 1 and 2 of the '709 Patent in violation of 35 U.S.C. § 271(a), by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

60. On information and belief, Premium indirectly infringes the '709 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly inducing its customers to directly infringe one or more claims of the '709 Patent. Specifically, Premium induces, encourages, and/or intends that its customers directly infringe the '709 Patent through, for example, their advertisement, marketing, sales, instructions, product manuals, technical support, onsite testing, use, quality assurance, and maintenance of the Accused Products. Premium has known and knows that its customers' making and use of the Accused Products constitutes direct infringement of at least claims 1 and 2 of the '709 Patent.

61. On information and belief, Premium indirectly infringes the '709 Patent in violation of 35 U.S.C. § 271(c), by actively and knowingly contributing to infringement of one or more

claims of the '709 Patent, at least by selling and/or offering to sell seals and components for wear plate assemblies, knowing that such seals and components are especially made or adapted for practicing one or more claims of the '709 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically, Premium has known and knows that its seals are especially made or adapted for use with and in the Accused Products, and that after installation, use of the Accused Products by Premium's customers constitutes direct infringement of at least claims 1 and 2 of the '709 Patent. Moreover, Premium has known and knows that there is no substantial, non-infringing use for its seal because it is only compatible with the Accused Products.

62. Premium has actual and constructive notice of the '709 Patent based at least in part on GDEP's marking of its products with the '709 Patent and by the filing of this Complaint.

63. On information and belief, despite having knowledge of the '709 Patent and GDEP's products, Premium intentionally copied the wear plate assembly used in GDEP's 7500 HD Fluid End product and has continued its infringement with disregard of the '709 Patent.

64. Premium's infringement of the '709 patent is willful, deliberate, and intentional, and Premium is acting in reckless disregard of GDEP's patent rights.

65. Because of Premium's infringement of the '709 Patent, GDEP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

66. Unless enjoined, Premium, and/or others acting on behalf of Premium, will continue their infringing acts, thereby causing additional irreparable injury to GDEP for which there is no adequate remedy at law.

67. Premium's actions render this an exceptional case and entitles GDEP to attorneys' fees and costs under 35 U.S.C. § 285.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GDEP respectfully prays for relief, as follows:

1) A judgment in favor of GDEP that Premium has directly and willfully infringed, actively induced infringement of, and/or contributorily infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

2) An order and judgment preliminarily and permanently enjoining Premium, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from further acts of infringement of the Asserted Patents;

3) A judgment awarding GDEP damages in an amount sufficient to compensate for Premium's infringement of the Asserted Patents, and in no event less than a reasonable royalty for Premium's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, plus costs, and all other damages permitted under 35 U. S. C. § 284;

4) A judgment that Premium's infringement of the Asserted Patents has been willful and deliberate;

5) A judgment awarding Plaintiff enhanced damages as a result of Premium's willful and deliberate infringement of the Asserted Patents, pursuant to 35 U.S.C. § 284;

6) A judgment declaring this case is exceptional under 35 U.S.C. § 285 and awarding costs, expenses, and attorneys' fees to GDEP; and

7) Awarding GDEP such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6(a), GDEP demands a trial by jury on all issues raised by the Complaint.

Dated: October 24, 2025

By: */s/Jennifer Klein Ayers*
JENNIFER KLEIN AYERS
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Ave, 20th Floor
Dallas, TX 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401
JAyers@sheppardmullin.com

ROBERT M. MASTERS
JONATHAN R. DEFOSSE
TIMOTHY P. CREMEN
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901
RMasters@shepparmullin.com
JDefosse@sheppardmullin.com
TCremen@sheppardmullin.com

**Attorneys for Plaintiff GD Energy Products, LLC**